UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BAY MARINE BOATWORKS, INC.,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>S/Y PURSUIT, et al.,<br><br>　　　　　Defendants. | Case No. 3:20-cv-05399-WHO<br><br>**ORDER ON MOTION TO AMEND SETTLEMENT AGREEMENT**<br><br>Re: Dkt. No. 93 |

　　　　For nearly two years, a ship has sat in a Richmond boatyard. More than a year after the parties in this admiralty case agreed to a settlement agreement to remove the vessel, it is still there. Plaintiff Bay Marine Boatworks, Inc. dba Svendsen's Bay Marine ("Svendsen's"), the owner of the yard, moves to amend the parties' settlement agreement to increase the penalty for delay that the parties negotiated. Because its reason for doing so is the vessel owner's delay and the penalty was freely negotiated to address that exact situation, the motion is denied. But should the vessel not be removed within two weeks, I would hear a motion to enforce (not amend) the settlement—including through coercive sanctions—on an expedited timeline.

**BACKGROUND**

　　　　The initial factual background of this case was discussed in the order issuing an arrest warrant for the S/Y Pursuit (the "Vessel"). *See* Dkt. No. 6. In brief, the Vessel is an 82-foot racing sloop owned by Christopher Wollen. *See id.* at 1. It was placed into a boatyard owned by Svendsen's so that it could perform work on the Vessel in May 2019. *Id.* at 1–2. The parties dispute what happened next. According to Svendsen's, it performed work on the Vessel and Wollen failed to pay. *Id.* According to Wollen, Svendsen's work was inadequate and it essentially held the Vessel "hostage" while charging fees. *See, e.g.*, Dkt. No. 20 (motion to quash

arrest warrant).

Svendsen's filed suit in August 2020 and Magistrate Judge Jacqueline Scott Corley issued a warrant to arrest the Vessel. *See* Dkt. Nos. 1, 6. After Wollen intervened and declined magistrate jurisdiction, the case was transferred to me and I denied Wollen's motion to quash the arrest warrant. *See* Dkt. No. 33.[1]

On February 12, 2021, the parties announced that they had reached a settlement, Dkt. No. 59, and they stipulated to conditional dismissal based on that settlement on February 16, 2021, Dkt. No. 60. Per that stipulation, the order of dismissal retained jurisdiction to enforce the settlement for a limited period. *See* Dkt. No. 61. That agreement is discussed below. In the time since, the parties have repeatedly stipulated, and I have repeatedly approved, orders extending my jurisdiction over the case to enforce the settlement. *See* Dkt. Nos. 63, 65, 67, 72, 74, 80, 86, 101. This has been necessary because, as discussed below, the Vessel has still not been removed from the boatyard. *See, e.g.*, Dkt. No. 81 (joint status report). In November 2021, the parties agreed in court that the Vessel would be removed by January 12, 2022, but that failed to occur. Dkt. Nos. 77 (agreement), 87 (confirmation of non-occurrence). Because of the repeated delays, I ordered the parties to begin appearing each week for case management conferences. *See* Dkt. Nos. 87, 89, 92, 95, 97, 102. Despite that, the Vessel remains at Svendsen's. *See* Dkt. No. 105. On February 18, 2022, in the midst of these weekly conferences, Svendsen's filed this motion to amend the settlement agreement.

## DISCUSSION

The settlement agreement provided that Wollen would pay Svendsen's $100 per day as a "lay day penalty." *See* Settlement Agreement ("Sett.") [Dkt. No. 93-4] ¶ 5N. Svendsen's argues that it negotiated the agreement with "the expectation that the Vessel would be removed from its yard within two weeks of completion of agreed vessel repairs" and that those repairs were completed in July 2021. Mot. 2. Because the Vessel has remained there, however, Svendsen's

---

[1] Wollen filed a separate suit over the same subject matter that was later related to this one. *See Wollen v. Bay Marine Boatworks*, No. 3:20-cv-5958-WHO, Dkt. No. 11. That suit was conditionally dismissed by stipulation with this one. *See id.*, Dkt. No. 29.

2

1  worries that Wollen has "taken advantage of the Settlement Agreement's relatively toothless $100

2  per day lay day penalty for months." *Id.* It moves to instead substitute the initial contract fee in

3  place of the $100 fee *nunc pro tunc* from August 1, 2021—that is, two weeks after the agreed

4  repairs were finished—onward. *Id.*

**I.     AVAILABILITY OF RELIEF**

As an initial matter, the parties dispute whether this form of relief is available at all. Svendsen's brings its motion under Federal Rule of Civil Procedure 60(b). *See* Mot. 8. Under that rule, "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for" several specified reasons. Fed. R. Civ. P. 60(b). Most of those reasons are not relevant. Instead, Svendsen's brings its motion under the rule's catchall provision, which permits that relief for "any other reason that justifies relief." *Id.* 60(b)(6). "Generally, only 'extraordinary circumstances' justify relief under the rule." *Keeling v. Sheet Metal Workers Int'l Ass'n, Loc. Union 162*, 937 F.2d 408, 410 (9th Cir. 1991) (citation omitted).

Svendsen's argues that the rule permits me to amend the order of conditional dismissal in this case to alter the underlying settlement agreement. *See* Mot. 8–9. Wollen admits that courts have sometimes used the rule to set aside settlement agreements, but argues that it cannot be used to "rewrite" a settlement agreement. Opposition to the Mot. ("Oppo.") [Dkt. No. 99] 5–6.

It is true that the law in this area is somewhat unsettled. *See* Wright & Miller, Fed. Prac. & Proc. Civ. § 2864 (3d ed.) (noting disagreement among courts). It is also true that the primary use of the rule as it relates to settlement agreements is simply vacating them with the order or judgment that depends on them. *See id.* n.6–7 (collecting cases). And it is true that Svendsen's motion included no authority about *amending* settlement agreements.[2] But that does not mean the law does not permit this sort of motion in appropriate circumstances.

In *Kelly v. Wengler*, the parties reached a settlement agreement in the district court. 822 F.3d 1085, 1091 (9th Cir. 2016). They then stipulated to dismiss the case, with the settlement

---

[2] Svendsen's only authority for this point—which did not discuss amendment in any event—is an unpublished case; I do not rely on it. *See* Mot. 8 (quoting *Stratman v. Babbitt*, 42 F.3d 1402, 1994 WL 681071 (9th Cir. Dec. 5, 1994) (unpublished)).

1  agreement attached as an exhibit to the stipulation. *Id.* The district court ordered dismissal with
2  prejudice, incorporating the parties' stipulation. *Id.* Later, the plaintiffs alleged that the defendant
3  was not adhering to the agreement; the district court eventually held the defendant in contempt and
4  had materially breached the settlement agreement. *Id.* at 1091–92. Among other remedial
5  measures, the district court unilaterally extended the term of the settlement agreement. *Id.* at
6  1093. The agreement was supposed to terminate after two years, but the district court extended it
7  for another two. *Id.*

8        On appeal, the Ninth Circuit upheld the district court's action. It first held that the district
9  court had subject matter jurisdiction over the matter because the order of dismissal incorporated
10 the settlement agreement. *Id.* at 1094. Then it held that the court had the authority to extend the
11 terms of the settlement agreement. It explained that "[c]ourts have long had inherent power to
12 modify court orders in changed circumstances," a power "now codified at Rule 60(b)." *Id.* at
13 1098. And a "substantial violation" of that order (incorporating the settlement terms) could
14 constitute a sufficient trigger for the rule. *Id.* Even though the settlement agreement was a private
15 contract, the court still had authority to modify the terms of the *order or judgment* that embodied
16 the agreement. *Id.*

17       Here, as in *Kelly*, the parties agreed to a settlement and I entered an order of conditional
18 dismissal. Here, even more clearly than in *Kelly*, my order (based on the parties' stipulation)
19 explicitly retained jurisdiction to enforce the terms of the settlement and was based on it. So here,
20 as in *Kelly*, if there truly has been a substantial breach of the settlement agreement's terms, it
21 would be a violation of the order of dismissal and would give me discretion to alter the order's
22 terms in line with traditional judicial principles. Though *Kelly* is the latest and most exact
23 manifestation of this rule, it is also part of a line of Ninth Circuit precedent permitting courts to
24 invoke Rule 60(b) when there has been a violation of the underlying settlement terms (provided
25 they have retained jurisdiction). *See, e.g.*, *Keeling*, 937 F.2d at 410. While I take Wollen's point
26 that settlement agreements are private contracts that courts do not usually rework, that does not
27 prevent altering the terms because the *judicial order* itself is what allocated the parties' rights and
28 obligations. *See Kelly*, 822 F.3d at 1098. As the Supreme Court has explained when it comes to

4

Rule 60(b) and the related issue of consent decrees, a "consent decree no doubt embodies an agreement of the parties and thus in some respects is contractual in nature.  But it is an agreement that the parties desire and expect will be reflected in, and be enforceable as, a judicial decree that is subject to the rules generally applicable to other judgments and decrees." *Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 378 (1992).

## II.     APPLICATION OF RULE 60(b)

The test for whether an order can be altered is set out above.  Svendsen's needs to show "extraordinary circumstances" through a "substantial violation" of the order (that is, the terms of the settlement agreement incorporated into the order).  Fed. R. Civ. P. 60(b)(6); *Kelly*, 822 F.3d at 1098.  For simplicity, the remainder of this Order refers to the "settlement agreement" rather than the order of dismissal based on it.

Svendsen's argues that amendment is warranted because, essentially, Wollen has unfairly taken advantage of the $100-per-day fee and unjustifiably delayed removing the Vessel from its boatyard.  Mot. 8–9.  It is certainly true that Wollen has delayed.  The Vessel was given to Svendsen's in May 2020.  This suit was filed in August 2020.  The parties settled in February 2021.  I appreciate that moving an 82-foot yacht is logistically complicated.  But Wollen voluntarily agreed to move the Vessel within two weeks of the repairs being finished and he has presented no evidence accounting for his long delay before taking the concrete steps that he has recently, such as signing a contract with a transportation provider.

That said, whether and how to alter the settlement agreement is a matter left to my discretion, provided that the prerequisites are satisfied.  *See Kelly*, 822 F.3d at 1098.  On these facts, increasing the past and future fees is not warranted.  Svendsen's claims that Wollen has effectively thwarted the settlement agreement.  As explained, I agree with Svendsen's that Wollen's delay has been unreasonable.  And the settlement agreement does contemplate Wollen removing the Vessel from the boatyard within two weeks of the repairs being completed and that time was of the essence.  *See* Sett. ¶¶ 5, 6A.  But the parties themselves negotiated an incentive and penalty to address this situation: the $100 fee is explicitly contemplated as a "penalty for delays from the agreed deadlines" for which the parties had to make sizeable up-front deposits.  *Id.*

¶ 5N. In other words, Svendsen's freely agreed to this $100 fee to achieve precisely the purpose for which it now argues is inadequate. This is not a situation in which the parties did not see delay as a possibility and one of them took advantage of that oversight.

At this point, moreover, the primary purpose of changing the fee structure would not be to incentivize future action as Svendsen's claims, it would be to provide Svendsen's with a windfall for past actions. The parties' latest update indicates that the Vessel will be imminently removed from the boatyard. *See* Dkt. No. 105. I take Svendsen's point that it does not have complete faith in this representation given the history of the case, but the reality remains that the amount Svendsen's would receive in retrospective compensation would, under its proposal, dwarf any prospective compensation.

Finally, I will not exercise my discretion to rewrite the agreement in this way because Svendsen's has long had other, better options for judicial relief that, for whatever reason, it has refused to use. At case management conferences, I repeatedly raised the prospect of a motion to *enforce* the settlement, which is the usual tool a party would use to compel another party to comply with its agreement. But Svendsen's never brought one. It has not even brought one now. It does not seek, for instance, an order requiring compliance by a date certain or for coercive sanctions. Instead, it just seeks more money (though not through sanctions) in contradiction of the penalty term it agreed. If Svendsen's had sought coercive sanctions, the parties would have been able to create a record of who did what when so that I could determine whether Wollen took all reasonable steps to comply with the settlement, rather than the current, relatively sparse and debated representations. If, after this Order issues, the Vessel is not swiftly removed from the yard as Wollen has recently represented it will be, *see, e.g.*, Dkt. No. 105, Svendsen's should file a motion to enforce the settlement and I will hear it on an expedited timeline.

## CONCLUSION

The motion to amend is DENIED.

**IT IS SO ORDERED.**

Dated: April 1, 2022



William H. Orrick
United States District Judge